

**NOT FOR PUBLICATION**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

| | |
|---|---|
| COLLEEN EASTMAN; CHRISTI CRUZ; CARMEN MENDEZ, <br><br> Plaintiffs-Appellants, <br><br> v. <br><br> QUEST DIAGNOSTICS INCORPORATED, <br><br> Defendant-Appellee. | No. 16-15793 <br><br> D.C. No. 3:15-cv-00415-WHO <br><br> MEMORANDUM<sup>*</sup> |

Appeal from the United States District Court
for the Northern District of California
William Horsley Orrick, District Judge, Presiding

Argued and Submitted November 15, 2017
San Francisco, California

Before:    THOMAS, Chief Judge, and W. FLETCHER and PAEZ, Circuit
           Judges.

Plaintiffs Colleen Eastman, Christi Cruz and Carmen Mendez appeal the

dismissal of their second amended complaint ("SAC") against Quest Diagnostics.

We have jurisdiction under 28 U.S.C. § 1291.  We review de novo a district court's

---

\*    This disposition is not appropriate for publication and is not precedent
except as provided by Ninth Circuit Rule 36-3.

grant of a Rule 12(b)(6) motion to dismiss for failure to state a claim. *See Edwards v. Marin Park, Inc.*, 356 F.3d 1058, 1061 (9th Cir. 2004). We affirm.

**1.** The district court properly concluded plaintiffs failed to allege a plausible monopolization claim under § 2 of the Sherman Act. Monopolization has two elements: "(1) the possession of monopoly power in the relevant market and (2) the willful acquisition or maintenance of that power as distinguished from growth or development as a consequence of a superior product, business acumen, or historic accident." *United States v. Grinnell Corp.*, 384 U.S. 563, 570-71 (1966). With respect to the second element, "[t]he test of willful maintenance or acquisition of monopoly power is whether the acts complained of unreasonably restrict competition." *Drinkwine v. Federated Publ'ns, Inc.*, 780 F.2d 735, 739 (9th Cir. 1985). The Sherman Act is not directed "against conduct which is competitive, even severely so, but against conduct which unfairly tends to destroy competition itself." *Spectrum Sports, Inc. v. McQuillan*, 506 U.S. 447, 458 (1993).

Plaintiffs alleged Quest maintained its market power through three exclusionary practices: (1) exclusive dealing with medical providers; (2) collusion with health plans; and (3) acquisition of competitors. The district court considered each of the alleged exclusionary practices—both in isolation and in

2

combination—and properly concluded plaintiffs failed to establish a plausible monopolization claim.[1]

*Exclusive dealing with medical providers*:  Although plaintiffs allege exclusive dealing in violation of § 2 of the Sherman Act, we may look to the standard for adjudicating exclusive dealing claims under § 3 of the Clayton Act for guidance. *Twin City Sportservice, Inc. v. Charles O. Finley & Co.*, 676 F.2d 1291, 1304 n.9 (9th Cir. 1982).  An exclusive dealing arrangement does not violate § 3 of the Clayton Act unless it is "probable that performance of the contract will foreclose competition in a substantial share of the line of commerce affected." *Tampa Elec. Co. v. Nashville Coal Co.*, 365 U.S. 320, 327 (1961).  When addressing exclusive dealing under the Sherman Act, "a greater showing of anticompetitive effect is required to establish a Sherman Act violation than a section 3 Clayton Act violation." *Twin City Sportservice v. Charles O. Finley & Co.*, 676 F.2d at 1304 n.9.  Further,

> [t]o determine the substantiality in a given case, it is
> necessary to weigh the probable effect of the contract on
> the relevant area of effective competition, taking into

---

[1] Plaintiffs actually allege four exclusionary practices under § 2 of the Sherman Act. However, their allegations of "tying" and "exclusive dealing" with medical providers are essentially the same exclusionary practice for § 2 purposes, and therefore the analysis set forth for exclusive dealing also applies to the tying claim for the purposes of § 2.

account the relative strength of the parties, the proportionate volume of commerce involved in relation to the total volume of commerce in the relevant market area, and the probable immediate and future effects which pre-emption of that share of the market might have on effective competition therein. It follows that a mere showing of the contract itself involves a substantial number of dollars is ordinarily of little consequence.

*Tampa Elec. Co.*, 365 U.S. at 329.

The district court did not err by concluding plaintiffs failed to allege facts from which it could be plausibly inferred that Quest's alleged exclusive dealing arrangements with medical providers foreclosed a substantial share of the plan/outpatient market. To plausibly allege foreclosure of the plan/outpatient market—in a substantial share or otherwise—plaintiffs at the very least needed to plead facts sufficient to support the inference that the exclusive dealing arrangements have some appreciable impact on the market. Although plaintiffs adequately explained how exclusive dealing arrangements with medical providers operate, they did not allege how many medical providers have in fact entered agreements with Quest. Nor did plaintiffs allege how the arrangements actually agreed upon have impacted other laboratories in the plan/outpatient market. These omissions are significant because, without such allegations, there are no facts that

4

allow the court to evaluate the effect of the exclusive dealing arrangements in the plan/outpatient market.

*Exclusive dealing/collusion with health plans*:  The district court properly held that plaintiffs' allegations related to exclusive dealing with health plans—referred to as collusion by the district court—also failed to plausibly demonstrate foreclosure of a substantial share of the market.  As the district court noted, plaintiffs alleged only that three laboratories were excluded from the Aetna and Blue Shield networks as a result of agreements with Quest.  Plaintiffs did not allege the market shares of any of these laboratories, what portion of Aetna and Blue Shield testing is performed out of network, how many laboratories remain in the Aetna and Blue Shield networks, or even what portion of Aetna and Blue Shield diagnostic testing is actually performed by Quest.  Plaintiffs ultimately did not allege a sufficient factual basis from which it is possible to infer that any particular portion of the plan/outpatient market was foreclosed as a result of exclusive dealing between health plans and Quest.

*Acquisition of competitors*:  In some instances, the merging of competitors to form a monopoly may violate § 2 of the Sherman Act.  *See Standard Oil Co. of New Jersey v. United States*, 221 U.S. 1, 77 (1911) (holding Standard Oil's acquisitions resulted in "absolute control" over refined oil products, which

5

established monopolization under § 2); *Grinnell*, 384 U.S. at 576 (holding a series of three acquisitions "eliminated any possibility of an outbreak of competition" and thereby "perfected the monopoly power to exclude competitors and fix prices."). To establish a § 2 violation, however, plaintiffs must still demonstrate how the acquisitions unreasonably restricted competition. *Drinkwine*, 780 F.2d at 739.

The district court properly concluded Quest's acquisitions of three competitors failed to plausibly establish a § 2 violation. Quest's acquisition of Unilab was not the typical merger of competitors because, as a result of the divestiture of Quest assets to LabCorp, which the FTC required before approving the acquisition, a new significant competitor entered the physician billing market. Plaintiffs' own allegations explain how the physician billing market is linked to the plan/outpatient market. Thus, the addition of a significant competitor to the physician billing market would entail an increase in competition in the plan/outpatient market. Furthermore, the acquisitions of Berkeley HeartLab and Dignity Health were both relatively insubstantial, increasing Quest's market share by only 6.6 percent. Plaintiffs never made allegations related to the remaining competitors in the relevant market.

Plaintiffs' exclusive dealing and collusion claims do not allege sufficient facts to support the drawing of any inferences about foreclosure of competition in

the plan/outpatient market. Plaintiffs' acquisition claim does not, on its own, establish an unreasonable restriction of competition. Thus, plaintiffs' allegations, considered in combination, do not establish a plausible monopolization claim.[2]

**2.** The district court properly held the plaintiffs failed to plausibly establish per se tying under § 1 of the Sherman Act. Tying occurs when a "seller conditions the sale of one product (the tying product) on the buyer's purchase of a second product (the tied product)." *Rick-Mik Enters., Inc. v. Equilon Enters. LLC*, 532 F.3d 963, 971 (9th Cir. 2008) (internal quotation marks omitted). "The essential characteristic of an invalid tying arrangement lies in the seller's exploitation of its control over the tying product to force the buyer into the purchase of a tied product that the buyer either did not want at all, or might have preferred to purchase elsewhere on different terms." *Eastman Kodak Co. v. Image Tech. Servs., Inc.*, 504 U.S. 451, 464 n.9 (1992) (internal quotation marks and alterations omitted).

A plaintiff must prove three elements to establish per se tying under § 1 of the Sherman Act: "(1) that there exist two distinct products or services in different markets whose sales are tied together; (2) that the seller possesses appreciable

---

[2] Plaintiffs also allege violations of the California Unfair Competition Law and the California Cartwright Act. The California Cartwright Act mirrors the Sherman Act and the California Unfair Competition Law claim was derivative of the monopolization claim. Therefore, we affirm the district court's dismissal of these claims as well.

7

economic power in the tying product market sufficient to coerce acceptance of the tied product; and (3) that the tying arrangement affects a 'not insubstantial volume of commerce' in the tied product market." *Paladin Assocs., Inc. v. Montana Power Co.*, 328 F.3d 1145, 1159 (9th Cir. 2003) (citing *Kodak*, 504 U.S. at 461-62). In this instance, plaintiffs failed to adequately plead coercion. Although plaintiffs alleged medical providers' "only viable economic option" was to accept the alleged Quest tying, plaintiffs did not allege facts to make this conclusion plausible. For example, as the district court noted, plaintiffs did not allege "the difference in pricing between capitated testing agreements with medical providers who do refer their fee-for-service testing to Quest, and capitated testing agreements with medical providers who do not." Nor did plaintiffs allege the extent to which medical providers have actually entered into discounted capitated agreements based on their referral of fee-for-service business.

**AFFIRMED.**